# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**KIMBERLY JEAN HARTLEY,**

    **Plaintiff,**

    v.

Civil Action 2:16-cv-637
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECCOMENDATION

Plaintiff, Kimberly Hartley, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI") and disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record. (ECF No. 11.) For the reasons that follow, the Undersigned **RECCOMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed her application for benefits on July 23, 2012, alleging that she had been disabled since June 12, 2012. (R. at 11.) Plaintiff's application was denied initially on January 15, 2013, and upon reconsideration on November 22, 2013. (*Id.*) Plaintiff sought a hearing before an administrative law judge. On July 23, 2015, Plaintiff, represented by counsel,

appeared and testified before Administrative Law Judge Edmund E. Giorgione ("ALJ"). Jerry A. Osheski, Ph. D., the vocational expert ("VE") also appeared and testified at the hearing. On August 21, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R at 11–24.) The ALJ's decision became the final Agency decision on May 23, 2016. (R. at 4–7.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff, who was fifty-two during the relevant time period, testified that she is married, and lives in a one story house with her husband. (R. at 501–2.) She graduated from high school and completed an associate's degree in medical assisting. (R. at 502.) She reported that her legs are her most severe problem, testifying "I can't stand, and I can't sit for long periods of time either because they just hurt, and since the knee replacements the pain is better, but it's still there, and I really don't know how to do anything else but jobs that entail standing." (R. at 505.) Plaintiff said that on a typical day her pain is a five out of ten. (*Id.*)

She testified that she is able to stand or sit for ten to fifteen minutes at a time. She testified that she attends church, is able to dress herself, but at times she needs help showering and uses a chair. (R. at 508.) Plaintiff and her husband share household chores. For example, she testified that her husband loads the laundry and she folds. (R. at 508–9.) Plaintiff is a smoker, but she testified she is trying to quit and has gone from smoking a pack of cigarettes a day to smoking a half a pack of cigarettes. (R. at 509.) Plaintiff also testified that she spends the majority of her day lying down. (R. at 513.) When asked why she spends a majority of her day laying down she responded, "[b]ecause it hurts to move, and to stand, and to do things. I mean, I try to do the things I have to do because you have to do things, you have to feed your husband,

and, you know." (R. at 513–14.) However, she testified that when she first stopped working she did not have to lay down all the time. (R. at 514.)

At the hearing Plaintiff wore a brace on her right hand, which she testified was for her carpal tunnel syndrome. (*Id.*) Plaintiff's last job was with All Clad Metal Crafters, and involved standing while working and lifting heavy machinery. (R. at 503–4.) She testified that she left in June 2012 because of the pain from standing. Two years after she stopped working she had knee replacement surgery in both knees. (R. at 510.) She testified that it took until 2014 because she no longer had insurance after she stopped working. (*Id.*)

B. **Vocational Expert Testimony**

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past relevant employment as a machine operator at the cookware factory and personal care attendant or nurse's aide are medium semi-skilled positions, and work at the box factory where she worked stacking boxes was a medium unskilled position. (R. at 517.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 517–20.) Based on Plaintiff's age, education, work experience, and residual functional capacity, the VE testified that a similarly situated hypothetical individual could not perform Plaintiff's past work, but could perform jobs as an assembler, with 3,000 jobs locally and 500,000 nationally; an inspector, with 600 jobs locally and 250,000 nationally; or as a mail clerk, with 130 jobs locally and 255,000 nationally. (R. at 518.)

## III. MEDICAL RECORDS

### A. Dr. Gregory Cush

On May 15, 2014, Plaintiff visited Dr. Gregory Cush, an orthopedic surgeon, about her left knee. An examination reveals no erythema, no increased warmth, no fluctuance, no pointing lesions , and no ecchymosis. (R. at 488.) Dr. Cush did find that Plaintiff was tender, a patellofemoral grind test was positive with crepitus noted, and Plaintiff's range of motion was "severely limited." (*Id.*) On June 23, 2015, Plaintiff underwent a total knee replacement surgery. (R. at 457.) In her six month postoperative evaluation, Dr. Cush reported Plaintiff's "symptoms are much improved compared to preoperative symptoms. Weight-bearing status: 100% . . . Patient has shown improvement in activity level." (*Id.*) On March 30, 2015, Plaintiff attended her pre-operative visit for her right knee replacement surgery. Dr. Cush's notes explain that she was scheduled for surgery on April 20, 2015, three months prior to the hearing. (R. at 452.) Plaintiff testified that she was prescribed a cane by Dr. Cush, however, none of Dr. Cush's treatment notes discuss the use of a cane. (R. at 511.)

### B. Dr. Anna Mathew

On December 9, 2012, Dr. Mathew examined Plaintiff at the request of Social Security. (R. at 291.) Dr. Mathew reported that Plaintiff has no assistive device and was "able to move about without any difficulties." (R. at 294.) Upon examination of the left knee she reported tenderness over the joint line and a range of motion of "0 to 140 compared to 0 to 150." (*Id.*) Dr. Mathew found that Plaintiff could walk 5–6 hours in an 8 hour workday; sit without limitation; and occasionally bend, kneel, stoop, crouch, balance, and climb. (R. at 297–98.)

**C. Dr. Scott L. Baron**

On June 26, 2012, Dr. Baron observed on exam of Plaintiff that she demonstrated a good range of motion in her wrist and forearm and that her finger motion is good except for a stiff right thumb. (R. at 163.)

**C. Dr. Justin Petrolla**

On August 15, 2012, an electrodiagnostic study ("EMG") was performed on Plaintiff's bilateral upper limbs. (R. at 161.) Dr. Petrolla reported that the study "is diagnostic for carpal tunnel syndrome, which is in the mild category with some motor findings."

**D. Dr. Bradley J. Lewis**

Dr. Lewis evaluated Plaintiff on November 7, 2013. He found that Plaintiff could stand and/or walk for about six hours in an eight-hour workday; sit about six hours; frequently climb ramps or stairs; frequently stoop; and occasionally balance, kneel, crouch, and crawl. (R. at 428.) He reported that Plaintiff "was able to walk in the room [without] difficulty, squatting, doing heel/toe walk." (*Id.*) He also noted Plaintiff had no established hearing limitations. (R. at 430.) He found Plaintiff only "partially credible," reasoning that she is not fully credible because she "brought a cane with her but it was not medically necessary." (*Id.*)

**E. Dr. Reynaldo Torio**

State agency physician Dr. Torio, reviewed Plaintiff's medical evidence on September 10, 2012. He reported that Plaintiff had severe impairments of osteoarthritis and allied disorders, COPD, and "hearing loss not treated with cochlear implantation." (R. at 42.) He found Plaintiff had no restrictions of activities for daily living or in social functioning and found only mild limitations in maintaining concentration, persistence or pace. (R. at 43.) He also found Plaintiff to be only partially credible based on the evidence in the record. (*Id.*)

# IV. ADMINISTRATIVE DECISION

On August 21, 2015, the ALJ issued his decision (R. at 11–24.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had engaged in substantially gainful activity from October 2012 through December 2012, but that there had been a continuous twelve-month period during which the Plaintiff did not engage in substantially gainful activity. (R. at 13.) The ALJ found Plaintiff has the severe impairments of "osteoarthritis with status post bilateral knee replacement; obesity; chronic obstructive pulmonary disease and asthma; a depressive disorder; and an anxiety disorder." (*Id.*) He found that "[t]here is a lack of objective medical evidence in the record to demonstrate that the claimant's bilateral carpal tunnel syndrome . . . cause[s] more than minimal functional limitations." (R. at 14.) He reasoned that although Plaintiff has undergone thumb and finger injections, she has a "good range of motion of the wrists and forearms, as well as good finger motion except [for a] stiff right thumb." (*Id.*) Moreover, the ALJ reasoned that any evidence of carpal tunnel syndrome reflected that it is in

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

the "mild category," that Plaintiff exhibited normal grip strength, and noted that Plaintiff has not spoken to her orthopedist about her carpal tunnel syndrome yet. (R. at 13, 18.)

He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours out of an 8-hour workday, sit 6 hours out of an 8-hour workday; push and pull on an unlimited basis except as defined by the ability to lift and carry; frequently climb ramps/stairs, stoop, and crouch; occasionally climb ladders/ropes/scaffolds, kneel, and crawl; should avoid even moderate exposure to extreme cold, humidity, fumes, odors, dust, gases, and poor ventilation. The claimant would need written, simple instructions that involve repetitive work tasks in a low stress environment with no more than occasional, superficial interaction.

(R. at 17.) In reaching this determination, the ALJ assigned Dr. Mathew's opinion that Plaintiff was capable of a range of light work "great weight," reasoning that her opinion "is generally consistent with the medical evidence of record as a whole." (R. at 18.) The ALJ also gave "great weight" to the state agency medical consultant's, Doctors Fox and Lewis, assessments that Plaintiff can perform work activities generally consistent with the light exertional level. (*Id.*) The ALJ gave Dr. Sethi's opinion, in which he found no restrictions or limitations, "less weight," reasoning that the "totality of the medical evidence of record shows that the claimant has osteoarthritis and has had bilateral knee replacements since Dr. Sethi's examination, which would reasonably cause her some limitations as assessed herein." (R. at 20.)

Based on the testimony of the VE, the ALJ concluded that considering Plaintiff's age, education, and residual functional capacity, she is capable of performing work that exists in

significant numbers in the national economy. (R. at 23–24.) The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 24.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff brings four contentions of error. First, she argues that the ALJ's determination at step two of the sequential evaluation was not supported by substantial evidence. Second, she contends that the ALJ failed to consider all of Plaintiff's impairments when formulating the RFC. Third, she argues that the ALJ erred in assessing her credibility. Finally, Plaintiff contends that the ALJ erred by not considering benefits for a closed period. (*See* SOE, ECF No. 12.)

**A. ALJ's Determination at Step Two**

The ALJ's findings at step two are supported by substantial evidence. At step two, the ALJ must determine whether the claimant has a severe impairment, which is construed as a "*de minimus* hurdle . . . intended to 'screen our totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." Soc. Sec. Rul. 1996 WL 374181, at *1 (1996). Once an ALJ finds at least one severe impairment, "an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Nejat*, 359 F. App'x. at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 2009).

Plaintiff argues the ALJ erred at step two by finding Plaintiff's carpal tunnel syndrome non-severe and not addressing Plaintiff's hearing loss. (SOE at 4–6.) At step two the ALJ found

9

severe Plaintiff's "osteoarthritis with status post bilateral knee replacement; obesity; chronic obstructive pulmonary diseases and asthma; a depressive disorder and an anxiety disorder." (R. at 13.) The ALJ found that the record lacked objective evidence supporting Plaintiff's claim that her carpal tunnel syndrome caused more than minimal functional limitations. (R. at 14.) The ALJ acknowledged that Plaintiff has had finger injections, but looked at evidence demonstrating that "she has a good range of motion of the wrist and forearms, as well as good finger motion except [for a] stiff right thumb." (*Id.*) He also cited to an EMG report evidencing the existence of carpal tunnel syndrome, but noting that it was found to be "in the mild category with some motor findings."

The ALJ further considered Plaintiff's carpal tunnel syndrome throughout the sequential process. (R. at 13–21.) For instance, the ALJ considered Plaintiff's testimony and reports that as a result of her carpal tunnel she experienced numbness, tingling, and difficulty grasping items; but noted that she stated she had not yet spoken to an orthopedist about her symptoms. (R. at 18.) As the ALJ found other severe impairments and did consider Plaintiff's carpal tunnel syndrome through the sequential process, he committed no reversible error in finding Plaintiff's carpal tunnel non-severe. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error.")

In regards to the ALJ's treatment of Plaintiff's hearing loss, Plaintiff points to State Agency physician Dr. Torio's report, which stated Plaintiff had the severe impairments of "osteoarthritis and allied disorders, COPD, [and] hearing loss not treated with cochlear implantation." (R. at 42.) The record, however, reflects no limitations resulting from Plaintiff's

10

hearing loss. In fact, Plaintiff's medical records reflect no hearing limitations. In a letter written on July 23, 2012, one of Plaintiff's doctors wrote "she reports today that she is hearing better now and that she is not experiencing any otalgia or otorrhea." (R. at 167.) In any event, Plaintiff has failed to point to any evidence suggesting that her hearing loss imposed any limitations on her ability to perform work. Plaintiff's argument conflates the concepts of diagnosis and disability. "A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual." *Tracy v. Comm'r of Soc. Sec.*, No. 1:12-cv-588, 2013 WL 3287113, at *4 (S.D. Ohio June 28, 2013) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . of course, says nothing about the severity of the condition."). In fact, in Plaintiff's brief before her hearing, she claimed to suffer from the impairments of "joint pain, degenerative joint disease bilateral hands, coronary heart disease, chronic chest pain/heart palpitations, shortness of breath, asthma, arthritis, lymphedema and carpal tunnel syndrome," but never mentioned suffering from hearing loss. (R. at 25.) Plaintiff, moreover, cites no objective medical findings supporting a severe hearing limitation. Nor does she cite to her testimony or reports to any physicians alleging severe hearing limitations. Furthermore, there is no evidence to suggest that the ALJ failed to consider all relevant medical evidence submitted. Accordingly, Plaintiff has not shown that the ALJ committed reversible error at step two and, even if there had been error, it was completely harmless. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe).

**B. RFC Formulation**

Plaintiff contends that the ALJ erred in formulating her RFC because the RFC exceeded the opined limitations by examining physician Dr. Mathew.[2] (SOE 7–8.) The Undersigned disagrees, finding instead that the ALJ properly evaluated objective medical evidence, which supports the ALJ's RFC assessment.

An ALJ is required to "evaluate every medical opinion" against a variety of factors, including the nature of the treatment relationship, the supporting medical basis for the opinion, and the overall consistency with the record as a whole. 20 C.F.R. §§ 404.1527(d) and 416.927; *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 438–39 (6th Cir. 2012). An opinion from a treating source is "'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician." *Id.* (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). Non-treating sources who physically examine a claimant but who do not have or did not have an ongoing treatment relationship with the claimant fall next along the continuum in terms of weight. *Id.* (citing *Smith*, 482 F.3d at 875).

Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated

---

[2] Plaintiff seemingly questions the ALJ's grant of "great weight" to Dr. Mathew's opinion, contending that Dr. Mathew "performed her examination two years before Plaintiff was able to obtain insurance and undergo bilateral total knee replacement." But then, in contradiction, Plaintiff argues that the ALJ failed to impose all limitations opined by Dr. Mathews. The Undersigned finds that upon review of the record as a whole, the ALJ did not err in granting Dr. Mathew's opinion "great weight" as there is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96–6p). Moreover, the Court notes that the medical evidence after Plaintiff's knee surgeries reflect general improvement. (R. at 457.)

12

plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Plaintiff takes issue with the ALJ's treatment of Dr. Mathew's opinion. She contends that the ALJ erred when he determined "that Plaintiff could *frequently* climb ramps/stairs, stoop, and crouch" instead of adopting Dr. Mathew's opinion that Plaintiff "could only do these things *occasionally*." (R. at 18; SOE at 8) (emphasis added.) The ALJ however, did not give "great weight" to Dr. Mathew's opinion *carte blanche*, but instead held that "[g]reat weight is given to the opinion of Dr. Mathew wherein she opined that the claimant was capable of a range of light work (Exhibit 6F), which is generally consistent with the medical evidence of record as a whole." (R. at 19.)

The ALJ supported his determination that Plaintiff could frequently climb ramps and stairs, stoop, and crouch with substantial evidence referring to the record as a whole. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.") (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted). For example, the ALJ also gave great weight to State Agency medical consultants' assessments, including Dr. Lewis, who similarly opined that Plaintiff could "frequently" climb ramps and stairs, balance, stoop, crouch; and

13

occasionally climb ladders/ropes/scaffolds, kneel and crawl. (R. at 44, 428.) Moreover, the ALJ assessed Plaintiff's activities of daily living and determined that her wide range of activities, including caring for her personal care, driving, socializing, using a computer, performing household chores, and shopping, "are not restricted to the extent that she would be precluded from the range of work assessed herein." (R. at 21.) As such, the ALJ supported his determination with substantial evidence. *See Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996) ("[i]t is within the authority of the ALJ to resolve any conflicts among" physicians' opinions). Accordingly, the Undersigned finds that the ALJ supported the RFC with substantial evidence.

## C. Credibility Determination

Additionally, Plaintiff posits that the ALJ erred in assessing Plaintiff's subjective complaints, arguing that the ALJ "erroneously found that Plaintiff made inconsistent or exaggerated statements." (SOE at 9.) The Undersigned disagrees.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be

"based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Storey v. Comm'r of Soc. Sec.*, No. 98–1628, 1999 WL 282700, at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid.").

In evaluating Plaintiff's credibility with respect to his subjective claims, the ALJ must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Second, if the ALJ finds that such impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Kalmbach v. Comm'r or Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Pursuant to SSR 16–3p, the ALJ must evaluate seven factors in determining credibility:

> In addition to using all the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416(c)(3). These factors include:
>
> 1. The individual's daily activities;

15

2. The location, duration, frequency, and intensity of pain other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16–3P, 2016 WL 1119029 (March 16, 2016).

SSR 16-3p tasks the ALJ with explaining his credibility determination with sufficient specificity as "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brothers v. Berryhill*, Case No. 5:16-cv-01942, 2017 WL 29125, at *11 (N.D. Ohio June 22, 2017) (citing *Rogers*, 486 F.3d at 248).

Upon review of Plaintiff's medical records, testimony, and reported daily activities, the ALJ reasonably concluded that "in addition to the general lack of objective evidence to support her subjective complaints, there are other considerations, including inconsistent or exaggerated statements, that weigh against the claimant's overall credibility." (R. at 21.) The record supports the ALJ's determination. *See Hensley v. Comm'r Soc. Sec.*, Case No. 1:15-cv-11, 2017 WL 1055152, at *5 (S.D. Ohio March 21, 2017) (finding the ALJ properly evaluated plaintiff's daily activities in assessing credibility). Plaintiff initially bears the burden of proving that she is disabled. 20 C.F.R. §404.1512(c) ("In general, you have to prove to use you are . . . disabled . . . . You must inform us about or submit all evidence known to you that related to whether or not

you are . . .disabled," including evidence related to "(5) [y]our daily activities both before and after the date you say that you became disabled."). The ALJ properly considered Plaintiff's inconsistent statements regarding her limitations and her daily activities when he assessed her RFC. *See Walters*, 127 F.3d at 532.

The ALJ further determined that Plaintiff's daily activities, such as her personal care, driving, socializing, household chores, and shopping, were not restricted to the extent that she would be precluded from the range of work assessed in the RFC. (R. at 21.) He further found that Plaintiff exaggerated her subjective complaints based on her use of a cane, which "is not medically necessary," and her testimony that she has to lie down a majority of the day, although "[l]ying down is also not medically necessary."[3] (*Id.*)

Because the ALJ made a reasoned and reasonable decision supported by substantial evidence in evaluating Plaintiff's subjective complaints, the ALJ's assessment of credibility is entitled to "great weight and deference." *Infantado*, 263 F. App'x at 475. Accordingly, the Undersigned finds that the ALJ offered good reasons for finding the Plaintiff not entirely credible and that substantial evidence supports those reasons.

**D. Closed Period**

Finally, Plaintiff argues that the ALJ erred by not considering a closed period of disability because "[e]ven assuming that Plaintiff was capable of performing light work on the date of the hearing, the ALJ should have considered whether claimant was disabled from . . .the alleged onset date . . .until she was able to obtain and heal from her bilateral knee replacements." The Undersigned disagrees. To prove disability, a claimant must show that his or her

---

[3] The ALJ's assessment is consistent with the opinions of state agency consultative examiners such as Dr. Lewis. Dr. Lewis for example found Plaintiff only "partially credible." (R. at 431.) He reasoned that she is not fully credible because she "brought a cane with her but it was not medically necessary." (*Id.*)

17

impairment or impairments "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Plaintiff does not offer evidence reflecting that she was disabled over a twelve-month period from June 12, 2012, her alleged onset date, until her knee surgeries. The ALJ's decision, moreover, did not merely reflect that Plaintiff was not disabled at the hearing, but also that according to Plaintiff's medical records, there was no twelve-month period where Plaintiff was disabled.

For example, Dr. Mathew's notes from her December 9, 2012 examination of Plaintiff reflect that Plaintiff had no assistive device and was "able to move about without any difficulties." (R. at 294.) Plaintiff's ability to walk without assistance, was again reported In November 2013, when Dr. Lewis examined Plaintiff and noted that Plaintiff "was able to walk in the room [without] difficulty, squatting, doing heel/toe walk." (R. at 428.) Plaintiff, therefore, did not provide evidence at the administrative level, and has failed to do here that she suffered from a disability for a consecutive twelve-month period. Accordingly, the ALJ properly considered and assessed Plaintiff's medical evidence.

## VII.     CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECCOMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.     PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 17, 2017                                  /s/ *Elizabeth A. Preston Deavers*
                                                      ELIZABETH A. PRESTON DEAVERS
                                                      UNITED STATES MAGISTRATE JUDGE